Argued and submitted in Portland February 9, 1999, affirmed February 23, 2000

David C. WOMER
and Terry L. Womer,
*Plaintiffs,*

*v.*

MELODY WOODS HOMES CORPORATION,
an Oregon corporation,
*Defendant.*

MELODY WOODS HOMES CORPORATION,
an Oregon corporation,
*Third-Party Plaintiff - Appellant,*

*v.*

LAND DEVELOPMENT CONSULTANTS, INC.,
nka LDC Design Group, Inc.,
an Oregon corporation,
*Third-Party Defendant,*

*and*

TECHNICAL ENGINEERING CORPORATION,
an Oregon corporation,
Thomas L. Amberg,
and Fidelity National Title Company of Oregon,
an Oregon corporation,
*Third-Party Defendants - Respondents.*

(C970220CV; CA A101621)

997 P2d 873

Michael R. Sahagian argued the cause and filed the briefs for appellant.

Brian R. Talcott argued the cause for respondents Technical Engineering Corporation and Thomas L. Amberg. On the brief were Frank H. Hilton, Jr., and Dunn, Carney, Allen, Higgins & Tongue.

Mary Ellen Page Farr argued the cause for respondent Fidelity National Title Company of Oregon. With her on the brief were Robert E. Kabacy and Kell, Alterman & Runstein, L.L.P.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

LANDAU, P. J.

.

## LANDAU, P. J.

Plaintiff homeowners initiated this action against defendant, their builder, alleging negligence and breach of contract arising out of defendant's construction of the home on an existing natural gas easement. Defendant filed third-party claims against Technical Engineering Corporation and its employee, Thomas L. Amberg, for negligently preparing the site survey and against Fidelity National Title Company of Oregon (Fidelity) for failing to ascertain the existence of the easement. The trial court entered summary judgment against defendant on its third-party claims. We affirm.

The relevant facts are not in dispute. Plaintiffs contracted with defendant to build them a house. Before constructing the home, defendant consulted a survey of the subdivision that had been prepared by Technical Engineering and Amberg. The survey shows the existence and location of a natural gas pipeline at five feet inside the eastern boundary of plaintiff's property, running north and south along the length of the eastern boundary. The pipeline is indicated by a broken line. An arrow pointing to the broken line is accompanied by the statement:

"LOCATION OF PIPELINE PER BOOK 377, PAGES 74 and 76. EASEMENT WIDTH INDETERMINATE."

The easement recorded in Book 377, page 74, grants to the Pacific Gas & Coke Company and its successors an easement "over, across and upon" the property for the purpose of constructing and maintaining a natural gas pipeline. The easement specifies that the pipeline itself is to be located five feet from a Bonneville Power Administration easement that coincides with the eastern boundary of plaintiffs' property. The easement further specifies that no one may construct any building within a distance of 10 feet from the pipeline. Finally, the easement grants the gas company the right to enter the property to maintain the area as necessary.

Defendant also relied on a preliminary title report prepared by Fidelity for plaintiffs' lender. The preliminary title report contained the following exception:

"8. Easement, including the terms, rights and provisions thereof,

| | | |
|---|---|---|
| For | : | Pipeline |
| Granted to | : | PORTLAND GAS & COKE COMPANY |
| Recorded | : | December 27, 1955 |
| Book | : | 377     Page    : 74 |
| Location | : | 5 feet along the West line of the Bonneville Power Administration right-of-way |
| Affects | : | The Easterly 5 feet (also shown on the plat)" |

The preliminary title report also contained a disclaimer that it was preliminary only and that Fidelity did not have "any liability until the full premium is paid and a policy is issued."

Defendant read the survey and the title report to reveal an easement located five feet from the property line. It then built plaintiffs' home so that a portion of it was closer than 15 feet from the eastern boundary of the property. Northwest Natural Gas, the successor to Portland Gas & Coke Company, objected to the location of the home and demanded that portions of it be removed. Plaintiffs then initiated this action against defendant, alleging claims for breach of contract and negligence arising out of defendant's failure to ascertain the precise location of the easement on the property and its construction of the home in an area subject to the easement. Defendant answered and filed a third-party claim against Technical Engineering, Amberg, and Fidelity, alleging that each was negligent in reporting the existence of a five-foot easement, when the easement actually was 15 feet wide.[1]

Technical Engineering and Amberg moved for summary judgment. They argued that the premise of defendant's third-party claim against them—that the easement of five feet shown on the survey actually was 15 feet—is demonstrably incorrect. They submitted a copy of the actual plat map that shows the location of the *pipeline* to be five feet from the boundary and expressly states that the easement itself is of

---

[1] Defendant also cross-claimed against Land Development Consultants, Inc., but all claims against that party were voluntarily dismissed.

"indeterminate" width and refers to the book and page number of the recorded easement for details. Because the plat map is entirely accurate, Technical Engineering and Amberg argued, defendant is not entitled to relief as a matter of law. Defendant responded with an affidavit of a licensed civil engineer who testified that he interpreted the easement to create an easement of determinable width and that the width was 15 feet.

Fidelity also moved for summary judgment arguing, among other things, that defendant cannot maintain a negligence claim for damages it suffered as a result of relying on the preliminary title report because the preliminary title report itself expressly warned that it was preliminary only and should not be relied upon. Defendant responded with an affidavit of its president stating that it is common and accepted practice to rely on preliminary title reports to determine the location of existing easements.

The trial court granted both motions for summary judgment and entered judgment on the third-party claims pursuant to ORCP 67 B. On appeal, defendant argues that the affidavits it submitted created genuine issues of material fact that precluded the entry of summary judgment.

■ We begin with the entry of summary judgment in favor of Technical Engineering and Amberg. Defendant argues that the affidavit of the civil engineer stating that there was an easement 15 feet in width creates at least a genuine issue of fact as to the width of the easement. The interpretation of an express easement, however, presents a question of law for the court. *Kell v. Oppenlander*, 154 Or App 422, 426, 961 P2d 861 (1998).

■ In this case, the easement describes the location of the pipeline, a "no build" zone 10 feet wide, and an indeterminate right of ingress and egress to maintain the pipeline. Nothing in the language of the easement fixes its ultimate location. *Some portion* of the easement is *at least* 15 feet wide. But the width of the easement ultimately is not stated, that is, it is indeterminate. That is precisely what the plat map says. Nothing on the plat map shows that there is an easement five feet wide. It shows merely that the location of the

pipe is five feet from the boundary and that there is an easement of indeterminate width and refers to the book and page number of the recorded easement. We conclude that the trial court did not err in entering summary judgment in favor of Technical Engineering and Amberg.

■ We turn to the entry of summary judgment in favor of Fidelity. Defendant argues again that its affidavit creates an issue of fact as to whether it was reasonable for it to rely on the preliminary title report. The right to rely, however, is a question of law. *U.S. National Bank v. Fought*, 291 Or 201, 222, 630 P2d 337 (1981); *Simpson v. Simpson*, 83 Or App 86, 88 n 1, 730 P2d 592 (1986), *rev den* 303 Or 454 (1987).

■ In this case, the preliminary title report expressly included the disclaimer that it was preliminary only and that it was not to be relied upon. The question is whether, as a matter of law, defendant had the right to rely on it despite the disclaimer. On point in that regard is our decision in *Warrington v. Transamerica Title Insurance Co.*, 40 Or App 841, 596 P2d 627 (1979). In that case, the plaintiff brought an action against a title company for failure to disclose in a preliminary title report the existence of an encumbrance on property that the plaintiff purchased. The report stated that it "shall become null and void unless a policy is issued, and the full premium therefore paid." The court held that the plaintiff had no right to rely on the preliminary report because its disclaimer "unambiguously informs the reader that, unless he as an insured party obtains a title insurance policy, he may expect no protection from the representations contained in the preliminary report." *Id.* at 847. This case is materially indistinguishable. We conclude that the trial court did not err in entering summary judgment in favor of Fidelity.

Affirmed.